[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ellison v. Black*, Slip Opinion No. 2021-Ohio-3154.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3154

THE STATE EX REL. ELLISON *v*. BLACK, WARDEN.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ellison v. Black*, Slip Opinion No. 2021-Ohio-3154.]

*Habeas corpus—Habeas corpus will lie as a remedy for a due-process violation only in extreme circumstances involving unreasonable delay—The petitioner must show that delay will impair his defense—Writ denied.*

(No. 2021-0399—Submitted May 28, 2021—Decided September 16, 2021.)

IN HABEAS CORPUS.

————————

**Per Curiam.**

{¶ 1} Petitioner, Timmey Ellison Jr., filed a petition seeking a writ of habeas corpus against respondent, Jennifer Gillece Black, warden of the Lorain Correctional Institution. On April 5, 2021, we ordered the warden to file a return on the writ to show cause for Ellison's confinement. 162 Ohio St.3d 1416, 2021-

Ohio-1147, 166 N.E.3d 1. Based on the return and the evidence in the record, we deny the writ.

**BACKGROUND**

**{¶ 2}** In July 2017, Ellison pleaded guilty to a misdemeanor count of domestic violence and a felony count of abduction. He was initially released on community control, but following a revocation hearing in March 2018, he was sent to prison for an aggregate term of 30 months, to be followed by three years of postrelease control. The sentencing entry authorized the parole authority to extend his sentence administratively, by up to half the original sentence, if Ellison violated the terms of his postrelease control.

**{¶ 3}** At the time of his sentencing, Ellison had 416 days of jail-time credit. Thus, his full prison term expired on July 6, 2019, and on that day, he was released to postrelease control. The conditions of his postrelease control included that Ellison "will not purchase, possess, own, use or have under [his] control, any firearms [or] ammunition." In addition, Ellison agreed to "obey federal, state and local laws and ordinances, including those related to illegal drug use."]

**{¶ 4}** In February 2021, the parole authority notified Ellison of a hearing to determine whether he had violated the terms of his release. The notice informed him of three alleged violations related to a December 28, 2020 traffic stop when he had in his possession or under his control (1) marijuana, (2) a Glock 19 9mm pistol, and (3) ammunition. In his investigative report, the trooper wrote that Ellison was a passenger in a vehicle stopped for speeding. The driver, Nicolle Ward, informed the trooper that there was a loaded firearm in the glovebox. The trooper found the firearm and spare ammunition. He also found marijuana in a bookbag.

**{¶ 5}** According to the report, Ms. Ward was questioned about Mr. Ellison's knowledge of the firearm and "she stated that he was fully aware of the weapon and its location." The report also identified the bookbag as belonging to Ellison, although it did not explain how the trooper knew this.

{¶ 6} In advance of the revocation hearing, Ellison filed a request for the parole authority to subpoena the trooper to appear as a witness. The parole authority issued the subpoena, but later determined that he was "unable to appear for [the] hearing due to being off work for an extended period of time." The parole authority did not compel his attendance.

{¶ 7} The trooper submitted a notarized statement certifying that his "case investigation and statements contained within [were] true and accurate for the arrest of Timmey Ellison Jr. on December 28, 2020," which the parole board accepted in lieu of his testimony. Thus, the evidence at the revocation hearing consisted of the trooper's report, unauthenticated photographs of a firearm, and the parole authority's unsworn violation report. There was no oral testimony presented at the hearing.

{¶ 8} The hearing officer's report found all three violations to be corroborated and recommended an administrative penalty of 270 days. That penalty was imposed, and Ellison began serving his nine-month term on March 23, 2021.

**LEGAL ANALYSIS**

{¶ 9} To be entitled to a writ of habeas corpus, a petitioner must show that he is being unlawfully restrained of his liberty and that he is entitled to immediate release from prison or confinement. R.C. 2725.01; *State ex rel. Cannon v. Mohr*, 155 Ohio St.3d 213, 2018-Ohio-4184, 120 N.E.3d 776, ¶ 10. "A writ of habeas corpus is generally 'available only when the petitioner's maximum sentence has expired and he is being held unlawfully.'" *Leyman v. Bradshaw*, 146 Ohio St.3d 522, 2016-Ohio-1093, 59 N.E.3d 1236, ¶ 8, quoting *Heddleston v. Mack*, 84 Ohio St.3d 213, 214, 702 N.E.2d 1198 (1998). Habeas corpus is not available to challenge a nonjurisdictional error when there is an adequate remedy in the ordinary course of law. *State ex rel. Walker v. Sloan*, 147 Ohio St.3d 353, 2016-Ohio-7451, 65 N.E.3d 744, ¶ 7.

**{¶ 10}** The revocation of parole implicates a liberty interest that cannot be denied without certain procedural protections. *Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). And there is "no material difference between probationers and parolees in the context of constitutional guarantees." *State v. Roberts*, 32 Ohio St.3d 225, 229, 513 N.E.2d 720 (1987). However, a parolee in a revocation proceeding is not entitled to all the procedural rights accorded the defendant in a criminal trial. *See State ex rel. Coulverson v. Ohio Adult Parole Auth.*, 62 Ohio St.3d 12, 16, 577 N.E.2d 352 (1991). For example, the exclusionary rule barring the admission of evidence obtained in violation of the Fourth Amendment does not apply in parole-revocation hearings. *State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St.3d 82, 91-92, 661 N.E.2d 728 (1996). Similarly, the parole board may admit hearsay evidence because "a parolee contesting revocation does not have the same confrontation rights as does a trial defendant." *Coulverson* at 16.

**{¶ 11}** At the same time, Department of Rehabilitation and Correction regulations guarantee certain due-process protections to persons facing administrative prison time as the result of an alleged postrelease-control violation. *See* Ohio Adm.Code 5120:1-1-18(A)(5). Of particular relevance here, the releasee has the right

> to confront and cross-examine adverse witnesses unless the parole board member or hearing officer finds good cause for not allowing confrontation. In the event that confrontation is disallowed, specific reasons for the same shall be documented in the record of proceedings.

Ohio Adm.Code 5120:1-1-18(A)(5)(c). This rule codifies the principle articulated in *Morrissey* that "[o]n request of the parolee, a person who has given adverse

4

information on which parole revocation is to be based is to be made available for questioning in his presence [unless] the hearing officer determines that the informant would be subject to risk of harm if his identity were disclosed." *Id.* at 487. The minimal requirements of due process in a revocation hearing require the ability to confront one's accuser unless the record shows that the witness was unavailable or there is a specific finding of good cause to not permit the confrontation. *State v. Miller*, 42 Ohio St.2d 102, 326 N.E.2d 259 (1975), syllabus.

{¶ 12} In this case, Ellison contends that the way that the revocation hearing was conducted violated his due-process rights. However, as a general rule, the sole remedy for such a violation (assuming one occurred, which we need not decide) is a writ of mandamus compelling the parole authority to conduct a second hearing. *See State ex rel. Jackson v. McFaul*, 73 Ohio St.3d 185, 188, 652 N.E.2d 746 (1995) ("As long as an unreasonable delay has not occurred, the remedy for noncompliance with the *Morrissey* parole-revocation due process requirements is a new hearing, not outright release from prison").

{¶ 13} We have held that habeas corpus will lie as a remedy for a due-process violation only in "extreme circumstances involving unreasonable delay." *Scarberry v. Turner*, 139 Ohio St.3d 111, 2014-Ohio-1587, 9 N.E.3d 1022, ¶ 14. When assessing whether a delay is unreasonable, prejudice to the detainee is the critical consideration. *Jackson* at 188. "Three interests that are weighed in the prejudice determination are: (1) prevention of oppressive prehearing incarceration, (2) minimization of anxiety and concern of the alleged parole violator, and (3) limitation of the possibility that delay will impair the accused parole violator's defense at his final parole revocation hearing." *Id*. The third element is the most serious, requiring the court's primary attention. *Id*., citing *Flenoy v. Ohio Adult Parole Auth.*, 56 Ohio St.3d 131, 136, 564 N.E.2d 1060 (1990).

{¶ 14} Ellison alleges that because of the delay in conducting a proper (i.e., constitutional) hearing in his case, the first and third factors of the prejudice

analysis have been met. But he does not attempt to show that the delay will impair his defense in the sense that evidence will be lost or recollections will fade. Instead, he argues that "[i]f a mandamus petition were used to obtain a new hearing, [he] would effectively spend all, or nearly all, of his 210-day prison term in prehearing detention, which would effectively destroy, not merely impair, his ability to defend against the * * * allegations."

{¶ 15} It is unclear whether Ellison believes the undue delay would result from the time required to get a writ of mandamus or to schedule and conduct a second hearing. If the former, then we deny the writ because Ellison has not demonstrated that pursuing a writ of mandamus will take an excessive amount of time. And if his concern is the amount of time that it would take for the parole board to conduct a second hearing, it does not follow that he is entitled to a writ of habeas corpus compelling his immediate release from confinement.

{¶ 16} We hold that Ellison is not entitled to a writ of habeas corpus.

Writ denied.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick and Andrew Hartman, Assistant Public Defenders, for petitioner.

Dave Yost, Attorney General, and Jerri L. Fosnaught, Assistant Attorney General, for respondent.

_____