[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Lindsay v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2023-Ohio-689.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-689

THE STATE EX REL. LINDSAY, APPELLANT, *v.* DEPARTMENT OF REHABILITATION & CORRECTION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Lindsay v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2023-Ohio-689.]

*Habeas corpus—Habeas corpus will lie only when a petitioner is entitled to immediate release—Court of appeals' judgment affirmed.*

(No. 2022-0402—Submitted January 10, 2023—Decided March 8, 2023.)

APPEAL from the Court of Appeals for Marion County, No. 9-21-43.

_____

**Per Curiam.**

{¶ 1} Appellant, Wendell R. Lindsay II, an inmate at the North Central Correctional Complex ("NCCC"), appeals the judgment of the Third District Court of Appeals dismissing his petition for a writ of habeas corpus. We affirm.

## Background

**{¶ 2}** In October 2010, a Richland County jury convicted Lindsay of one count of rape of a minor, one count of sexual battery, and one count of gross sexual imposition. *State v. Lindsay*, 5th Dist. Richland No. 2010-CA-0134, 2011-Ohio-4747, ¶ 5. The trial court sentenced him to an aggregate prison term of ten years to life. The sex-offender sentencing entry stated that Lindsay was a "Tier I Sex Offender/Child Victim Offender." The court of appeals affirmed his convictions and sentence.

**{¶ 3}** According to Lindsay, his first parole hearing was scheduled for June 17, 2021. He says that in January 2021, his case manager informed him that he had been granted parole in advance of the hearing and would be released from prison on his original parole-hearing date. He received paperwork setting forth the conditions of his parole and providing information about his reentry into society, and he met with a parole-authority liaison, who confirmed his June 17 release date. But on June 17, as Lindsay was preparing to leave, a unit manager informed him that his grant of parole had been a mistake. Lindsay claims that ten days later, prison officials explained that he was not being released because they had inadvertently overlooked what they believed to be his conviction of a sexually-violent-predator specification.

**{¶ 4}** Subsequently, Lindsay received a letter dated June 15, 2021, from a parole-board hearing officer, who wrote:

> This notice is to inform you that the Parole Board conducted a Sexually Violent Predator review on JUNE 15, 2021 due to the fact that you have been sentenced under the terms of the Sexually Violent Predator Sentencing Law.
>
> It was determined by a majority vote not to recommend that the Parole Board conduct a hearing to consider terminating control over the service of your prison term. As such, the Parole Board will

maintain control over the service of your prison term and has scheduled your next Sexually Violent Predator review for JUNE 2023.

(Capitalization sic.) And on August 24, he received a letter from a representative of the parole board, stating:

> You were convicted under a statute, SB 260 [Am.Sub.S.B. No. 260, 151 Ohio Laws, Part I, 1915 ("S.B. 260")], which, based upon the age of the victim at the time of the offense, sentences you to the terms of the Sexually Violent Predator Sentencing Law. As such, you will be subject to biennial review by the parole board to determine your suitability to have a hearing conducted whether to relinquish control of your case back to the sentencing court.

The representative apologized for the "confusion at the institution regarding [Lindsay's] release" but reiterated that "the parole board did not issue [him] a parole."

{¶ 5} On December 3, 2021, Lindsay filed a petition for a writ of habeas corpus in the Third District, naming as respondents each of the appellees here, the Ohio Department of Rehabilitation and Correction ("DRC"); the Adult Parole Authority; Tom Watson, the warden of NCCC; and the Richland County Common Pleas Court. Lindsay alleged that after serving his mandatory minimum sentence, he satisfied the conditions for parole and had been granted release. He claimed that prison officials used the pretext of a sexually-violent-predator specification to keep him incarcerated, even though he was not convicted of any such specification. Based on these allegations, Lindsay claimed a right to immediate release.

{¶ 6} The common pleas court and the warden each filed motions to dismiss. The Third District granted the motions and dismissed Lindsay's petition. The court

of appeals explained that Lindsay was convicted under R.C. 2971.03, the sexually-violent-predator sentencing law. *See* S.B. 260 (effective January 2, 2007). According to the court of appeals, Lindsay "appear[ed] to conflate the Sexually Violent Predator *Specification*, which enhances the sentence for the underlying felony and must have an attendant indictment and conviction, with the Sexually Violent Predator *Sentencing Law*, which sets forth the sentencing scheme for certain sex offenses." (Emphasis and capitalization sic.) 3d Dist. Marion No. 9-21-43, at 5 (Mar. 10, 2022). The court of appeals also noted that "an inmate has no constitutional or statutory right to parole." *Id.*

{¶ 7} Lindsay appealed to this court as of right.

## Legal analysis

{¶ 8} A writ of habeas corpus "is warranted in certain extraordinary circumstances 'where there is an unlawful restraint of a person's liberty and there is no adequate remedy in the ordinary course of law.' " *Johnson v. Timmerman-Cooper*, 93 Ohio St.3d 614, 616, 757 N.E.2d 1153 (2001), quoting *Pegan v. Crawmer*, 76 Ohio St.3d 97, 99, 666 N.E.2d 1091 (1996). With few exceptions, habeas corpus will lie only to challenge the jurisdiction of the sentencing court. *State ex rel. Quillen v. Wainwright*, 152 Ohio St.3d 566, 2018-Ohio-922, 99 N.E.3d 360, ¶ 6. This court reviews dismissals under Civ.R. 12(B)(6) de novo. *State ex rel. McKinney v. Schmenk*, 152 Ohio St.3d 70, 2017-Ohio-9183, 92 N.E.3d 871, ¶ 8.

{¶ 9} Pursuant to R.C. 2967.271, it is presumed that a person who is sentenced to a nonlife, indefinite prison term will be released from prison after the expiration of his minimum sentence. R.C. 2967.271(B). Relying on this law, Lindsay argues that DRC established his "presumptive release date" as June 17, 2021, and by giving him that date, DRC created a liberty interest that is protected by the state and federal due-process clauses.

{¶ 10} R.C. 2967.271 was adopted as part of the Reagan Tokes Law, 2018 Am.Sub.S.B. No. 201, effective March 22, 2019. And the Reagan Tokes Law applies only to felonies committed on or after its effective date. *See* R.C. 2901.011; R.C. 2929.14(A)(1)(a) and (A)(2)(a); R.C. 2929.144(A) and (B); *see also State v. Meeks*, 6th Dist. Ottawa No. OT-22-015, 2022-Ohio-2436, ¶ 7. Lindsay was not sentenced pursuant to the Reagan Tokes Law, so its provisions do not apply to him.

{¶ 11} Lindsay also asserts that when he signed that paperwork in connection with his prospective release, it "established a mutually explicit understanding between [DRC] and [Lindsay], that he would indeed be released 6/17/2021." Lindsay therefore asserts in his first proposition of law that when DRC canceled his release, it violated his due-process and equal-protection rights. But an inmate has no constitutional right to be released on parole before the expiration of his sentence. *State ex rel. Bailey v. Ohio Parole Bd.*, 152 Ohio St.3d 426, 2017-Ohio-9202, 97 N.E.3d 433, ¶ 9. And Lindsay cites no authority for his novel suggestions that a mistake by an agent of DRC conferred a vested right to immediate release or that DRC's mistake created a binding contract.

{¶ 12} Nevertheless, even assuming that Lindsay could establish a vested liberty interest, his remedy for an alleged procedural-due-process violation would not be immediate release from prison. Instead, his claim that DRC's review procedures violated his procedural-due-process rights would at most entitle him to a writ of mandamus compelling a second review. *See State ex rel. Ellison v. Black*, 165 Ohio St.3d 310, 2021-Ohio-3154, 178 N.E.3d 508, ¶ 12; *Scarberry v. Turner*, 139 Ohio St.3d 111, 2014-Ohio-1587, 9 N.E.3d 1022, ¶ 14. We overrule Lindsay's first proposition of law.

{¶ 13} Lindsay's remaining propositions of law are merely extensions of the argument in support of his first proposition of law. In his second proposition of law, Lindsay asserts that DRC violated the Ex Post Facto Clause of the United States Constitution when it imposed a sexually-violent-predator specification on

him that was not in his sentencing entry. And in his third proposition of law, he contends that DRC violated the separation-of-powers doctrine by imposing a sentence that was different from the one imposed by the trial court. The Third District correctly addressed these claims, noting that Lindsay was not convicted of a sexually-violent-predator *specification* but was instead sentenced pursuant to the sexually-violent-predator *sentencing law*. In other words, while DRC allegedly changed its mind about Lindsay's parole, it did not base that decision on an uncharged specification. We therefore overrule Lindsay's second and third propositions of law.

### Conclusion

{¶ 14} Lindsay has alleged that DRC misinformed him about his parole status. That error does not create a constitutional right to parole. We affirm the judgment of the Third District Court of Appeals dismissing his petition for a writ of habeas corpus.

Judgment affirmed.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

––––––––––––––––

Wendell R. Lindsay II, pro se.

Dave Yost, Attorney General, and Lisa K. Browning, Assistant Attorney General, for appellee Tom Watson, warden of NCCC.

––––––––––––––––